## Walter *versus* Gernant.

It is not fraudulent to leave property purchased at sheriff's sale in the possession of the former owner, for his use. But if the purchaser *falsely* declare at the sale, that he is buying for the family of the defendant, the property will be subject to subsequent executions.

So if the property were bought in for the family, *with the debtor's money*.

The declarations of the by-standers, at the sale, that the purchaser would buy in the property for defendant, are evidence as a part of the *res gestæ*.

WRIT of Error to the Court of Common Pleas of *Berks county*.

Casper Walter, plaintiff in error and plaintiff below, *vs.* George Gernant, defendant in error and defendant below.

This was an action of trespass by Casper Walter, against George Gernant, late sheriff, to recover damages from him for seizing and selling the plaintiff's goods and chattels, under an execution against George Guenther. The goods in question were at one time the property of said George Guenther, and as such were levied upon and sold by sheriff Esterly, on an execution against Guenther, at the suit of Esther Wiser, on the 27th of December, 1843, and were purchased by Casper Walter, the plaintiff in this action, at the sale, and left by him in the possession of Guenther, his brother-in-law, the defendant in the execution. Casper Walter paid to sheriff Esterly on the day of sale, for the goods purchased by him, the sum of $169 84. The said goods remained in the possession of Guenther until the 23d of November, 1846, when the said George Gernant, as sheriff of the county, sold said goods and chattels by virtue of an execution, issued at the suit of Andrew Ziegler *vs.* George Guenther, after full notice by Walter that he claimed them.

The defence set up by sheriff Gernant was, that the sale of the goods to Walter in 1843 was a fraudulent one, and designed to protect them from execution in the hands of Guenther, who, he alleged, was the real purchaser. The defendant contended that the conduct of Walter at the sale, when he purchased the goods, was so illegal and fraudulent as to render null and void any purchase made by him then, although he may have paid the purchase money to the sheriff. That he was guilty of trick and management to prevent a fair competition among bidders for the property, and to buy it himself at an under-value. The simple question was: did the evidence in the case show that Casper Walter was guilty of such actual fraud in purchasing said goods, as authorized George Gernant to levy upon them and sell them as the property of George Guenther?

The goods generally were sold at an under-value. Some were taken away by Walter; of the remainder, some were consumed by

[Walter *v.* Gernant.]

Guenther, some were sold, and the balance remained in the possession of Guenther, until the end of about three years, when they were levied upon.

Here followed the principal testimony that bore on the question of fraud.

The court, GORDON, President, charged the jury, *inter alia.*— If Walter was guilty of falsehood or trick to prevent persons from bidding at the sale, no purchase by him would vest the title of the goods in him, so as to prevent them from being sold as Gunther's property, by Guenther's execution creditors. If he told the bidders he was bidding under an arrangement for their benefit, and this was not true, the purchases made by him were fraudulent and void. If he told them he was buying the goods with the design of leaving them with Guenther as an act of benevolence, when it was not so, his purchase would be fraudulent; but if he told them the truth in this respect, and was buying with the intention to leave the goods with his brother-in-law, we think that was not fraudulent, although it might have had the effect of preventing persons at the sale from bidding—neither they nor the execution creditors were bound to regard it as an impediment in the way of their bidding. It is the agreement between persons, before hand, not to bid against each other, or the assertion of some fact tending to diminish the value of the property selling, and not founded in truth, that the law deems fraudulent and invalidates the sale for. The plaintiff here insists on the fairness of his purchase, and has called witnesses who testify that they were at the sale, and neither saw nor heard of any attempt on the part of Walter to prevent people from bidding the goods to their value. The witnesses have spoken of articles sold cheap and bought by themselves at the sale, with the encouragement of Walter to bid. You will consider the whole of the evidence, and unless you find some collusion or arrangement between Walter and others, to prevent persons from bidding, or some false assertion on his part, calculated to have the same effect, the goods bought by him at the sale became his property, and he was not divested of it by leaving it with the defendant in that execution. The defendant says that the use of the grain in the ground by Guenther, and the consumption of a number of other articles, shows that the property was not in fact Walter's, but Guenther's. Of this you are to judge. To which opinion of the court the plaintiff, by his counsel, excepted, and requested that the same may be filed of record, which is accordingly done.

The jury rendered a verdict for the defendant.

Errors were assigned, some of which were, that

The court erred in charging the jury, that if Walter told the bidders he was bidding under an arrangement for their benefit,

[Walter *v.* Gernant.]

and this was not true, the purchases made by him were fraudulent and void.

The court erred in charging the jury, that if Walter told the purchasers he was buying the goods with the design of leaving them with Guenther, as an act of benevolence, when it was not so, his purchase would be fraudulent.

That if the goods were bought for Guenther, and paid for with Guenther's money, of which, it was alleged, there was evidence, and that the jury might infer from the use of the grain in the ground, &c., that the property was not in fact Walter's, but Guenther's.

The case was argued by *Dechert* and *Banks* for plaintiff in error.

By *N. D. Strong* for defendant in error.

PER CURIAM.—The law of the case seems to have been stated accurately and fairly. It is certainly not a fraud to leave property purchased at sheriff's sale in the possession of the former owner for his use, or even for his consumption. No presumption of fraud arises from retention of possession after a sale, which being made under the supervision of the law, cannot be colorable; and permission to use or enjoy the thing bought, is an act of benevolence which does not amount to a gift of it, or revest it in the debtor. But if the purchaser falsely appeal to the benevolence or the cupidity of the bidders or creditors, by giving out that he is buying for the family, or to sell again at an advanced price for the benefit of the creditors, the property will remain with the debtor, subject to subsequent executions. Any false declaration of intention to gain a particular advantage would have that effect. So if the property were bought in for the family with the debtor's money; and in all these principles. the jury were properly instructed. But it is said there was no evidence to be submitted. The evidence was certainly scant: still there was enough to carry the case to the jury. The fact that the plaintiff converted part of the property to his own use, and the fact that he promised the bidders to sell the property again for their advantage, but did not, were circumstances of more or less weight. The declarations of the bystanders at the sale were proper to go to the jury, not only because they were part of the *res gestæ,* which showed that the plaintiff's professions had affected the bidding, but because the slightest circumstances are admissible in questions fraud. The case was properly put to the jury; and if the verdict was wrong, the plaintiff had no remedy but a motion for a new trial.

　　　　　　　　　　　Judgment affirmed.